Nos. 109,836
111,126

In the Matter of MIRIAM M. RITTMASTER, *Respondent*.
(326 P.3d 376)

Opinion filed June 6, 2014.

*Stanton A. Hazlett*, Disciplinary Administrator, argued the cause, and was on the formal complaints for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., Topeka, argued the cause, and *Miriam M. Rittmaster*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Miriam M. Rittmaster, of Overland Park, an attorney admitted to the practice of law in Kansas in 1998. Two separate complaints were filed against the respondent as set out below.

## Case No. 109,836

On January 4, 2013, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent untimely filed an answer on March 7, 2013. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on March 7, 2013, where the respondent was personally present and was represented by counsel. Respondent's oral motion to accept answer out of time was granted at the hearing. The hearing panel determined that respondent violated KRPC 1.1 (2013 Kan. Ct. R. Annot. 446) (competence); 1.3 (2013 Kan. Ct. R. Annot. 464) (diligence); 1.4(a) (2013 Kan. Ct. R. Annot. 484) (communication); 1.15(b) (2013 Kan. Ct. R. Annot. 553) (safekeeping property); 8.1(b) (2013 Kan. Ct. R. Annot. 646) (failure to respond to lawful demand for information from disciplinary authority); 8.4(c) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct involving misrepresentation); and Kansas Supreme Court Rule 207(b) (2013 Kan. Ct. R. Annot. 336) (failure to cooperate in disciplinary investigation).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

*"Findings of Fact*

. . . .

"7. On September 13, 2011, S.S. retained the respondent to represent her in a domestic case. S.S. paid the respondent $1,500.00 for the representation. Prior to that time, another attorney had filed a petition for divorce on behalf of S.S. The other attorney was allowed to withdraw from the representation on September 23, 2011.

"8. Beginning on September 14, 2011, S.S. attempted to contact the respondent to request that the respondent obtain service of the divorce petition on S.S.'s estranged husband. Many of S.S.'s attempts to contact the respondent regarding service went unanswered.

"9. On October 21, 2011, S.S. sent the respondent a text message asking about service. When the respondent did not respond to S.S.'s request for information, S.S. called the sheriff's department and learned the respondent had not requested that the sheriff's department serve S.S.'s estranged husband. S.S. called the clerk of the Johnson County District Court and learned that the respondent had not yet entered her appearance on behalf of S.S.

"10. Later that day, the respondent called S.S. and told S.S. that she would do what was necessary to obtain service that day. The respondent also sent S.S. a text message that she had provided the necessary information to the sheriff's department to obtain service.

"11. On October 25, 2011, S.S.'s estranged husband was served with process.

"12. On October 27, 2011, S.S. contacted the respondent about what should occur next in her divorce action. The respondent told S.S. she was trying to get in touch with S.S.'s estranged husband's lawyer. On November 2, 2011, S.S. left a message requesting a status update and asked the respondent provide her with a copy of certain documents, including a copy of the answer filed in the case. The respondent did not provide S.S. with a copy of the answer or the other documents.

"13. Through November 10, 2011, S.S. continued to contact the respondent in an attempt to obtain information. The respondent continued to fail to provide S.S. with the requested information. On November 10, 2011, the respondent called S.S. and promised to provide her with sample parenting plans and the other documents previously requested by S.S. On November 13, 2011, November 16, 2011, and November 22, 2011, S.S. made additional requests for the information. The respondent failed to provide the requested information.

"14. The court scheduled a hearing regarding the temporary orders in S.S.'s divorce proceeding for December 1, 2011. The respondent received notice of the hearing. The respondent failed to inform S.S. that a hearing had been scheduled. Neither S.S. nor the respondent appeared at the hearing.

"15. At the hearing, the Court reduced the amount of child support that S.S.'s estranged husband was required to pay S.S. Additionally, the Court made the child support effective October 1, 2011, rather than the date the divorce petition was filed. Previously, the respondent assured S.S. that the effective date of the child support would be the date the divorce petition was filed.

"16. Later, on December 1, 2011, S.S. learned that a hearing had been held that morning. S.S. contacted the respondent about the hearing. The respondent falsely told S.S. that she did not know about the hearing. The respondent told S.S. not to worry about missing the court hearing. The respondent told S.S. that the clerk of the district court failed to notify the respondent of the hearing and that another hearing had been scheduled for January 11, 2012. S.S. again requested that the respondent provide her with a copy of certain documents. The respondent promised to send the documents by electronic mail. Again, the respondent failed to forward the documents to S.S.

"17. On December 2, 2011, S.S. called the clerk of the district court. The clerk informed S.S. that the respondent had been twice notified of the December 1, 2011, hearing. The clerk indicated that the respondent received an electronic mail message on November 16, 2011, notifying her of the hearing and also opposing counsel provided a written notice of hearing to the respondent. Finally, the clerk told S.S. that a hearing was not scheduled on January 11, 201[2], in S.S.'s divorce case.

"18. That same day, S.S. called the respondent but did not reach the respondent. The respondent later returned the call, but did not reach S.S. The respondent left a message stating that she would call S.S. again on Monday, December 5, 2011. The respondent failed to call S.S. on Monday, December 5, 2011.

"19. On December 6, 2011, S.S. sent the respondent a letter terminating the respondent's representation. Additionally, S.S. requested that the respondent send S.S. a copy of her file.

"20. On December 7, 2011, S.S. called the respondent and left a message. Later that day, the respondent sent S.S. a text message stating that the respondent had experienced a family emergency and would not be able to get in touch with S.S. until the following Monday. S.S. responded and directed the respondent to withdraw from the representation as soon as possible.

"21. On December 9, 2011, S.S. retained new counsel, Stephanie Goodnow. Ms. Goodnow entered her appearance on December 12, 2011.

"22. Thereafter, S.S. called the respondent and asked for an itemized statement and a refund of unearned fees. Later, S.S. sent the respondent a letter demanding a refund. The respondent never provided S.S. with an itemized statement or refund.

"23. On March 21, 2012, S.S. filed a complaint with the disciplinary administrator's office.

"24. On March 30, 2012, the disciplinary administrator sent the respondent a letter notifying her that a complaint had been received and docketed for investigation and directing the respondent to provide a response to S.S.'s complaint.

The respondent failed to provide a response to S.S.'s complaint as directed by the disciplinary administrator.

"25.   The complaint was sent to the Johnson County Ethics and Grievance Committee for investigation. Michael Whitsitt was assigned to investigate S.S.'s complaint.

"26.   On April 10, 2012, and May 15, 2012, Mr. Whitsitt sent letters to the respondent directing the respondent to provide a written response to S.S.'s complaint. The respondent failed to provide a written response to S.S.'s complaint.

"27.   On June 25, 2012, Mr. Whitsitt called the respondent. During the telephone conversation, the respondent promised Mr. Whitsitt that she would provide a response by July 6, 2012. The respondent never provided a response to S.S.'s complaint.

### "Conclusions of Law

"28.   Based upon the findings of fact and the respondent's stipulation, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15, KRPC 8.1, KRPC 8.4, and Kan. Sup. Ct. R. 207, as detailed below.

### "KRPC 1.1

"29.   Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The respondent failed to represent S.S. with the thoroughness and preparation reasonably necessary for the representation. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.1.

### "KRPC 1.3

"30.   Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent S.S. in her domestic relations case. Because the respondent failed to act with reasonable diligence and promptness in representing her client, the hearing panel concludes that the respondent violated KRPC 1.3.

### "KRPC 1.4

"31.   KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter.' In this case, the respondent violated KRPC 1.4(a) when she failed to timely respond to requests for information from S.S. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

### "KRPC 1.15

"32.   Lawyers must safeguard their clients' property. Specifically, KRPC 1.15 provides:

'(b)   Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third

person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.'

The respondent violated KRPC 1.15(b) in two ways. First, the respondent failed to provide an accounting of fees as requested by S.S. and as required by KRPC 1.15(b). Second, the respondent failed to refund unearned fees. Retaining unearned fees is tantamount to conversion. If a fee has not been earned, it should remain available to be refunded to the client. The respondent failed to account and failed to refund unearned fees that were paid by S.S. Because the respondent failed to properly account for fees and refund unearned fees, the hearing panel concludes that the respondent violated KRPC 1.15(b).

### "KRPC 8.1 and Kan. Sup. Ct. R. 207

"33.    Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) provide the requirements in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority, . . . .' KRPC 8.1(b).

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.'

Kan. Sup. Ct. R. 207(b). The respondent failed to respond to the initial complaint as directed by the disciplinary administrator and Mr. Whitsitt. As such, the hearing panel concludes that the respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) by failing to provide a written response to the initial complaint filed by S.S.

### "KRPC 8.4(c)

"34.    'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The respondent engaged in conduct that involved dishonesty when she falsely told S.S. that she had not received notice of the hearing scheduled for December 1, 2012. Additionally, the respondent engaged in conduct that involved dishonesty when she told S.S. that a second hearing had been scheduled for January 11, 2012. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

### "American Bar Association
### Standards for Imposing Lawyer Sanctions

35.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for

Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"36. *Duty Violated.* The respondent violated her duty to her client to provide competent and diligent representation and adequate communication. Also, the respondent violated her duty to the public and the legal profession to maintain her personal integrity. Finally, the respondent violated her duty to the legal system to comply with court orders.

"37. *Mental State.* The respondent knowingly and intentionally violated her duties.

"38. *Injury.* As a result of the respondent's misconduct, the respondent caused actual injury to S.S., the legal profession, and the legal system.

"Aggravating and Mitigating Factors

"39. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"40. *Prior Disciplinary Offenses.* The respondent has been previously disciplined on one occasion. On April 23, 2007, the respondent entered a diversion agreement with the disciplinary administrator. In the agreement, the respondent admitted that she violated KRPC 1.1, KRPC 1.3, KRPC 1.4, and KRPC 1.5. The respondent successfully completed the terms and conditions of diversion.

"41. *Dishonest or Selfish Motive.* The respondent engaged in dishonest conduct in her representation of S.S. As such, the hearing panel concludes that the respondent's misconduct was motivated by dishonesty.

"42. *A Pattern of Misconduct.* The respondent engaged in a pattern of misconduct by repeatedly failing to adequately communicate with S.S. Accordingly, the hearing panel concludes that the respondent engaged in a pattern of misconduct.

"43. *Multiple Offenses.* The respondent committed multiple rule violations. The respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15, KRPC 8.1, KRPC 8.4, and Kan. Sup. Ct. R. 207. Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"44. *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process.* The respondent failed to provide a written answer to the initial complaint filed by S.S. as directed by the disciplinary administrator and Mr. Whitsitt.

"45. *Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1998. At the time of the misconduct, the respondent had been practicing law for approximately 13 years.

"46.   Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"47.   *Personal or Emotional Problems if Such Misfortunes have Contributed to Violation of the Kansas Rules of Professional Conduct.* During the hearing, the respondent testified about personal and emotional problems that she has suffered during the past couple of years and their adverse impact on her representation of S.S. The respondent's personal and emotional problems were significant and occurred at substantially the same time as the misconduct. The hearing panel concludes that the respondent's personal and emotional problems contributed to her violations of the rules. Additionally, based upon the respondent's appearance before the hearing panel, the hearing panel concludes that the respondent's emotional difficulties continue to affect her ability to practice law.

"48.   *Remorse.* At the hearing on the formal complaint, the respondent expressed genuine remorse for having engaged in the misconduct.

"49.   In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

4.42   Suspension is generally appropriate when:
  (a)  a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
  (b)  a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'4.62   Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.'

### "Recommendation

"50.   At the hearing on the formal complaint, the disciplinary administrator recommended that the respondent be suspended from the practice of law for a period of six months. Additionally, the disciplinary administrator recommended that before the respondent is reinstated that she undergo a reinstatement hearing, under Kan. Sup. Ct. R. 219. The respondent agreed with the disciplinary administrator's recommendation that the respondent's license to practice law [be suspended] for a period of six months and that the respondent undergo a reinstatement hearing under Kan. Sup. Ct. R. 219.

"51.   During the disciplinary hearing, the respondent stated that she is currently unable to practice law and tentatively agreed to the temporary suspension of her license to practice law in the State of Kansas. Following the hearing, the disciplinary administrator and the respondent filed a joint motion for temporary suspension, to be effective April 1, 2013. The Supreme Court granted the motion and on April 1, 2013, the Court suspended the respondent's license to practice law during the pendency of the disciplinary proceedings.

"52.   Based upon the findings of fact, conclusions of law, the aggravating factors, and the Standards listed above, the hearing panel unanimously recommends

that the respondent's license to practice law in the State of Kansas be suspended from the practice of law for a period of six months. Further, the hearing panel also recommends that the respondent undergo a reinstatement hearing, under Kan. Sup. Ct. R. 219, prior to consideration of reinstatement.

"53. Costs are assessed against the respondent in an amount to be certified by the office of the disciplinary administrator."

## Case No. 111,126

On November 5, 2013, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on December 18, 2013. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on January 8, 2014, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.3 (2013 Kan. Ct. R. Annot. 464) (diligence); 1.4(a) (2013 Kan. Ct. R. Annot. 484) (communication); 1.16(a)(2) and (d) (2013 Kan. Ct. R. Annot. 569) (termination of representation); and 8.4(d) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct prejudicial to the administration of justice).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

### "Findings of Fact

. . . .

### "License Status

"7. On April 24, 1998, the Kansas Supreme Court admitted the respondent to the practice of law in the State of Kansas. In the spring of 2013, the respondent and the disciplinary administrator filed a joint motion for temporary suspension, as the respondent was unable to practice law at that time. On April 1, 2013, the Kansas Supreme Court issued an order temporarily suspending the respondent from the practice of law. The respondent's license remains suspended at this time.

### "DA11793

"8. In September, 2011, J.F. filed a petition for divorce against R.F. and obtained a temporary order of custody of his minor children. J.F. was unable to serve R.F. and requested and received permission from the court to serve R.F. by publication. Following service by publication, on February 2, 2012, the court entered a decree of divorce.

"9. On March 19, 2012, R.F. retained the respondent. The respondent agreed to attempt to set aside the decree of divorce. However, R.F. did not provide the respondent with the attorney fee at that time.

"10. On June 7, 2012, the State of Kansas filed a motion for the establishment of support and qualified medical support order. The Court scheduled a hearing on the motion for July 3, 2012.

"11. On July 3, 2012, R.F. appeared without counsel. By this time, R.F. still had not paid the respondent the attorney fee.

"12. On July 16, 2012, August 1, 2012, and August 15, 2012, R.F. paid the respondent's attorney fee in installments.

"13. On August 6, 2012, the respondent informed R.F. that she had entered her appearance in the divorce action. At that time, the hearing regarding support had been continued to August 7, 2012. The respondent contacted the attorney for the State of Kansas, Roger Marrs, and requested that the hearing be continued until August 28, 2012. Mr. Marrs agreed to the continuance and the court rescheduled the matter.

"14. Prior to August 28, 2012, the respondent requested that the hearing be continued again. The respondent's request was denied. On August 28, 2012, the respondent and R.F. failed to appear for the hearing. At that time, the Court entered an order of child support against R.F. in the amount of $379.00 per month. The Court also ordered R.F. to provide medical insurance for the children.

"15. On October 5, 2012, the respondent filed a motion to set aside default judgment on behalf of R.F. The respondent also filed a motion to modify custody, parenting time, and child support and a motion to appoint a guardian *ad litem*. The respondent failed to take any steps to have the motions set for hearing.

"16. After the respondent filed the motions on behalf of R.F., R.F. repeatedly contacted the respondent to find out about the status of the motions. The respondent failed to respond to text messages, electronic mail message[s], and telephone calls from R.F. and the respondent failed to provide R.F. with updates regarding the status of the representation.

"17. On March 7, 2013, after the respondent failed to communicate with R.F., R.F. informed the respondent that she had retained another attorney to represent her. R.F. requested that the respondent provide an accounting of time and charges in the case. Additionally, R.F. requested that the respondent return her papers. The respondent did not provide an accounting, return any unearned fees, nor did she return R.F.'s papers.

### "Conclusions of Law

"18. Based upon the respondent's stipulation and the above findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.16, and KRPC 8.4, as detailed below.

### "KRPC 1.3

"19. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and

promptly represent R.F. in the domestic case. The respondent failed to appear in court, the respondent failed to obtain a hearing date for the motions, and the respondent failed to take any action, other than filing the motions, to complete the representation of R.F. Because the respondent failed to act with reasonable diligence and promptness in representing R.F., the hearing panel concludes that the respondent violated KRPC 1.3.

### "KRPC 1.4

"20. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the respondent violated KRPC 1.4(a) when she repeatedly failed to respond to requests for information from R.F. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

### "KRPC 1.16

"21. KRPC 1.16 requires lawyers to take certain steps to protect their clients. In this case, the respondent's conduct violated KRPC 1.16(a) and KRPC 1.16(d). KRPC 1.16(a) provides, in pertinent part, as follows:

'(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

. . . .

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client.'

The respondent violated KRPC 1.16(a)(2) by failing to withdraw from the representation after her mental health deteriorated to the point where she was unable to provide representation to her client.

"22. KRPC 1.16(d) is also applicable in this case. It provides:

'(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

The respondent violated KRPC 1.16(d) when she failed to return R.F.'s papers, when she failed to provide an accounting of the fee, and when she failed to return the unearned attorney fees. The hearing panel concludes that the respondent repeatedly violated KRPC 1.16(d).

### "KRPC 8.4(d)

"23. 'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when she

failed to appear in court on behalf of R.F. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

"American Bar Associatio
Standards for Imposing Lawyer Sanctions

"24.   In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"25.   *Duty Violated.* The respondent violated her duty to her client to provide diligent representation and adequate communication and to the legal system by her failure to appear for scheduled hearings.

"26.   *Mental State.* The respondent knowingly violated her duty.

"27.   *Injury.* As a result of the respondent's misconduct, the respondent caused actual injury to her client.

"Aggravating and Mitigating Factors

"28.   Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"29.   *Prior Disciplinary Offenses.* On April 23, 2007, the respondent entered a diversion agreement with the disciplinary administrator. In the agreement, the respondent admitted that she violated KRPC 1.1, KRPC 1.3, KRPC 1.4, and KRPC 1.5. The respondent successfully completed the terms and conditions of diversion.

"30.   In addition, last year, the respondent had another attorney disciplinary hearing. The Kansas Supreme Court placed that case on hold pending the hearing in the instant case.

"31.   *A Pattern of Misconduct.* The respondent has engaged in a pattern of misconduct. The misconduct committed by the respondent in [the] case that gave rise to the diversion and the misconduct in the case that is currently on hold before the Kansas Supreme Court involved misconduct similar to the misconduct in this case. As such, the hearing panel concludes that the respondent has engaged in a pattern of misconduct.

"32.   *Multiple Offenses.* The respondent committed multiple rule violations. The respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.16, and KRPC 8.4. Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"33.   *Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1998. At the time of the misconduct, the respondent had been practicing law for more than 15 years.

"34. *Indifference to Making Restitution.* The respondent failed to make restitution to R.F. for the unearned attorney fees, although the hearing panel notes that the respondent has not had the finances to make restitution as of the hearing.

"35. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"36. *Absence of a Dishonest or Selfish Motive.* The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

"37. *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct.* The respondent suffers from attention deficit disorder and depression. It is clear that the respondent's mental health difficulties contributed to her misconduct. The respondent has been working diligently in psychotherapy and has made excellent progress, according to her clinical psychologist. Additionally, the respondent has complied with the recommendations to take medication to treat her mental health conditions. Finally, the chair of the hearing panel noted a significant improvement in her appearance as compared to her appearance in the previous attorney disciplinary hearing.

"38. *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The respondent fully cooperated with the disciplinary process and fully and freely acknowledged her misconduct. The respondent accepted full responsibility for her misconduct.

"39. *Remorse.* At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"40. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.42   Suspension is generally appropriate when:
   (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
   (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

"*Recommendation*

"41. Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for a period of one year retroactive to April 1, 2013. The hearing panel further recommends that prior to reinstatement, the respondent be required to undergo a hearing pursuant to Kan. Sup. Ct. R. 219. The respondent must be prepared to establish, prior to filing a petition for reinstatement, that she has made full restitution to her clients and/or the Client Protection Fund.

"42. Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2013 Kan. Ct. R. Annot. 356). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaints, to which she filed answers, and adequate notices of both the hearings before the panel and the hearing before this court. The respondent filed no exceptions to the hearing panel's final hearing reports. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2013 Kan. Ct. R. Annot. 375).

The evidence before the hearing panel establishes by clear and convincing evidence the charged misconduct violated KRPC 1.1 (2013 Kan. Ct. R. Annot. 446) (competence); 1.3 (2013 Kan. Ct. R. Annot. 464) (diligence); 1.4(a) (2013 Kan. Ct. R. Annot. 484) (communication); 1.15(b) (2013 Kan. Ct. R. Annot. 553) (safekeeping property); 1.16(a)(2) and (d) (2013 Kan. Ct. R. Annot. 569) (termination of representation); 8.1(b) (2013 Kan. Ct. R. Annot. 646) (failure to respond to lawful demand for information from disciplinary authority); 8.4(c) and (d) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct involving misrepresentation and engaging in conduct prejudicial to the administration of justice); 8.4(d) (engaging in conduct prejudicial to the administration of justice); and Kansas Supreme Court Rule 207(b) (2013 Kan. Ct. R. Annot. 336) (failure to cooperate in disciplinary investigation), and it supports the panel's conclusions of law. We adopt the panel's conclusions.

At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator recommended that the respondent be suspended for a period of 1 year and that

the respondent undergo a reinstatement hearing, under Kansas Supreme Court Rule 219 (2013 Kan. Ct. R. Annot. 407). The respondent agreed with the recommendation of the Disciplinary Administrator. The Hearing Panel also agreed with the recommendation of the Disciplinary Administrator.

We hold that respondent should be suspended from the practice of law for a period of 1 year, retroactive to April 1, 2013, and that she be subject to a Rule 219 reinstatement hearing before her suspension may be lifted. In respondent's motion for reinstatement she is required to address whether an appropriate plan for supervision and support of her resumption of the practice of law is needed. At the reinstatement hearing, the respondent is required to present clear and convincing evidence that she has (1) made full restitution to her clients and/or the Client Protection Fund, and (2) received adequate mental health treatment to render her capable of engaging in the active practice of law.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Miriam M. Rittmaster be suspended from the practice of law in the state of Kansas for a period of 1 year, retroactive to April 1, 2013, in accordance with Supreme Court Rule 203(a)(2) (2013 Kan. Ct. R. Annot. 300).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2013 Kan. Ct. R. Annot. 406) and Rule 219. More specifically, her motion for reinstatement must address whether an appropriate plan for supervision and support of her resumption of the practice of law is needed. At the reinstatement hearing, she is required to present clear and convincing evidence that she has made full restitution and has received adequate mental health treatment to render her capable of engaging in the active practice of law.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

MORITZ, J., not participating.

DAVID J. KING, District Judge, assigned.